Case number 18-5471 Thomas Allen v. Mike Parris. Argument not to exceed 15 minutes per side. Ms. Spohr, you may proceed for the appellants. Good morning your honors. May it please the court, my name is Caroline Spohr and I represent the petitioner Thomas Nathaniel Allen and I'll be reserving four minutes for rebuttal. Very well. The Anti-Terrorism and Effective Death Penalty Act or AEDPA as it is more colloquially known sets forth a two-part test for obtaining a writ of habeas corpus where the petitioner's claim was adjudicated on the merits in state court. First, the petitioner must show that the state court decision was contrary to or an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. Second, the petitioner must show that the constitutional error at all was not harmless. Here, Mr. Allen has met both of these requirements. The trial court's denial of his motion to sever his trial from that of his two co-defendants and subsequent admission of those co-defendants incriminating statements at trial violated Mr. Allen's Sixth Amendment rights and the Tennessee Court of Criminal Appeals decision to the contrary was an unreasonable application of clearly established federal law. So this case kind of falls in between, at least the first of the three statements, Smith's statement about the Green Suburban, falls in between two Supreme Court cases. It's not directly like Gray because Gray involved the deletion of names but it was obvious with the blanks and Richardson involved the deletion of any reference at all to another individual. So what do you think that means for purposes of AEDPA if there's no case directly on point, right? It's kind of in between Richardson and Gray. Does that foreclose us from finding a violation because AEDPA requires clearly established Supreme Court precedent? No, Your Honor, and I have two points to respond to that. First, the rule in Gray is broader than simply a statement is inadmissible where it replaces the word blank or the word deleted. So the rule is that whenever the statement is directly accusatory or contains some obvious indication of alteration, its admission is a violation of the Confrontation Clause. So Mr. Allen's case falls squarely within that rule. And second, I'll point this court to the Third Circuit case cited in our brief, Washington v. Secretary Pennsylvania Department of Corrections. In that case, there were very similar facts. The co-defendant's statement that was admitted at a joint trial referred to the defendant, his other defendant, as the driver and the man who went into the store with Jimmy. And the Third Circuit held, using the AEDPA standard, that this was a violation of Gray because the words the driver and the man who went into the store with Jimmy could have only referred to the defendant. The defendant knew exactly who the declarant was referring to when he made the statement. And the court in the Third Circuit found that those replacements for the name were sufficient indications of alteration such that they were directly accusatory and rendered the statement inadmissible under the Sixth Amendment. What if these statements can be viewed and you can be argued about them because they certainly aren't the blanks or the omissions and whatnot they have to do with identifying gender and cars and so forth and so on. But supposing I say, just for the purpose of discussion to you, I'll give you that it was error to admit that statement, but you can't show prejudice. So the prejudice inquiry, first, I think it's important to remember the overarching standard that this court needs to keep in mind when evaluating whether an error was harmless. It's not about plucking the bad evidence out and looking at what remains to see if it was sufficient. This is from O'Neill v. McIninch, which we cited in a 28-J letter. The question that Your Honor should ask is, do I, the judge, think that the error substantially influenced the jury's verdict? And here that answer should be yes, because when you look at the Delaware v. Van Arsel factors that the Supreme Court has laid out for determining when a confrontation clause violation is harmless or not, those factors weigh in Mr. Allen's favor, particularly with respect to the first statement about the Green Suburban. As a general matter, juries give great weight to confessions. So they were much more inclined to pay attention to the statements because they were the confessions of Smith and Jarnigan that were made to law enforcement. The Green Suburban statement was the only evidence that the jury heard about how Mr. Smith obtained the murder weapon. So it was not cumulative. There was no corroborating evidence. That was it. The prosecution relied on that evidence to prove that the premeditation of the crime took place in Hamblin County, which was where the trial took place. The actual homicide took place in another county, so venue was an issue. And the prosecution relied on the Green Suburban statement to prove both venue and premeditation. The final Van Arsel factor is the overall strength of the prosecution's case. And here the evidence against Mr. Allen was extremely weak. There was absolutely no physical evidence. The government recovered the gun after Ms. Jarnigan drew them a map pointing to its location. There was no fingerprints. There was no DNA. No physical evidence linking him to the gun. No documentary evidence or paper trail connecting him to the alleged payments that were made after the crime. What would you say if I distinguished, so Washington, the case you mentioned out of the Third Circuit, found that it was harmful because there was really only one other witness who testified incriminating the defendant. Whereas here there was at least four other witnesses who testified about the defendant's involvement in trying to set up the crime and trying to hide the crime after the fact. So doesn't that at least distinguish the Washington case? Because we have not just one theoretical witness as in Washington. We have at least four as I reviewed the transcript. There were four. We have, yes, four witnesses who did implicate Mr. Allen. Although I can't anticipate that the response to the argument I'm about to make is going to be the jury heard this evidence of bias, I will point out that each of these witnesses had either admitted to extensive drug use at the time of the events in question, smoking crack multiple times per day. They had each received extremely favorable plea deals in exchange for their testimony, including Daniel Epps whose testimony was probably the most with first-degree murder. In exchange for her testimony, she received eight years probation. Yes, the jury heard this evidence. But Mr. Allen's joint trial, the admission of the co-defendant's statements, and the fact that he was tried alongside the confessed shooter, not only did Mr. Smith make statements incriminating Mr. Allen, but Mr. Smith did not dispute the fact that he fired the weapon that killed the victim. He disputed his intent. So all of this together prejudiced the jury such that they were not able to give the witnesses fair consideration. Because when you look at this impartially and examine these four witnesses, each of whom I would submit were very much motivated to provide favorable testimony for the government, there's simply not enough there to establish first-degree murder, which was what Mr. Allen was convicted of. That requires a very high burden of proof. And while O'Neill does instruct that it's not just about looking at the evidence that remains, that's the strength of the prosecution's cases, but one of the five Van Arsel factors. Their case was in fact very weak. The other thing that occurs to me is that a lot of what you're saying would have more impact if we were dealing with a direct appeal, but this is habeas. And the question isn't so much at this juncture whether there was inadmissible evidence, but whether the state's handling of that issue was unreasonable. You know, and that language is very strong. It could be erroneous or incorrect, but it also must be unreasonable. Isn't it kind of hard to state that dealt with this, that their resolution of it was unreasonable? It's not hard to say that it was unreasonable. And in fact, when you look at the Tennessee Court of Criminal Appeals decision, in some ways it's very thorough. It goes through all of the evidence that was presented against each defendant. But with regard to the particular Confrontation Clause claim, the Court devotes a couple of paragraphs to the claim, does not identify any of the statements specifically, does not address any of the redactions specifically, does not even give any particular indication, aside from saying that it has carefully reviewed the statements, as to whether such careful review actually took place or whether it merely read them, didn't see Mr. Allen's name, and assumed that they were acceptable. And in fact, part of the reason this Court granted a Certificate of Appealability was because the District Court did the same. So while I do acknowledge that the fact that the state court gave what I would consider to be a very cursory treatment of this issue is still sufficient adjudication on the merits for EDPA purposes. So your brief to us is kind of a lot more thorough than the brief in the state system. For instance, the instruction point, I think that's a pretty compelling point, that there was actually no prudent instruction. That suggests that the evidence wasn't limited. But I wonder whether, is there any like procedural default issues with raising that for the first time, since doesn't the District Court can say, hey, I want this instruction, and I couldn't see anything in the record in the state system challenging the lack of instruction the first time I really saw that was here. No, there was, to my knowledge, there was not a specific objection made to the jury instruction. However, I don't think that that's a procedural default issue, because the issue that has been appealed at the state level and now is before this Court, is the broader issue of the denial of the severance and the violation of the confrontation clause. And within that issue is the Supreme Court law that says that when you have incriminating statements from co-defendants, they have to be accompanied by a proper limiting instruction. Well, first of all, the statements can't be admitted if they directly incriminate, regardless of whether there's a limiting instruction. And even if they are admissible otherwise, they still have to have a limiting instruction. And so that sort of falls within the general confrontation clause purview. And I see my time is up, but I will finally note that procedural default is not a jurisdictional bar at any rate to this Court's consideration of the claim. Thank you. May it please the Court. Meredith Bowen for the respondent. If I could start, Judge Guy, in response to your question to counsel. It is impossible to say in this case that with the jury having heard the evidence that was submitted, that the state court's decision was unreasonable. This Court should affirm the decision of the district court where petitioners claim that the trial court erred in consolidating his case with his co-defendants was properly denied. There is nothing unreasonable about the state court's decision. And under the highly deferential AEDPA standard, the state court, I'm sorry, the district court's review of the state court's decision was proper and should be affirmed. If I could take a moment to talk about the instruction. There is, in the record, evidence that there was an instruction, a vague and generalized instruction, given it both the beginning and the end. That instruction said, it didn't effectively say you should only consider evidence that has been limited against that particular defendant, but then there was no limiting instruction as far as I can tell, saying that these, that this incriminating hearsay should be limited to just Smith and Jarnigan. You're correct. There isn't. And there is also no... Why is this even a Bruton claim? Why isn't it a Crawford claim? Because there is absolutely no case law that requires that there be a specific instruction given. Had a specific instruction given, opposing counsel would be arguing that a specific instruction was given, Your Honor, and therefore it drew attention to that instruction. Doesn't Bruton, I thought the entire Bruton line of cases says the reason this isn't a confrontation clause concerned, at least in some respects, is because the evidence isn't being used against the particular defendant within the meaning of the Sixth Amendment. But without the limiting instruction, it clearly is being used against the defendant. And in fact, the prosecutor, at the end, in closing argument, affirmatively used it against the defendant by saying, we know who was in the green Suburban. It was Mr. Allen. I would love to address that next. The requirement for a limiting instruction is that a limiting instruction, as was given in this case, is given. There is no requirement under Bruton that a more specified instruction be given. So the generalized instruction given at both the beginning and the end of this trial, that all evidence that pertains to one defendant only be utilized against that one defendant, suffices. That was sufficient. The trial court made no error in terms of the limiting instructions. But that instruction, you would agree that that instruction didn't in any way tell the jury that the Smith and Jernigan statement should only be used against Smith and Jernigan? It is implied in the generalized nature of that instruction. And I do agree with you that it's not there. And Respondent's position is that there is absolutely no case law requiring it to be there. Again, if it were there, then we would have opposing counsel arguing that that level of specificity, in some way, drew attention to those statements and made them weightier than the rest of the evidence, which isn't the case. That generalized instruction completely suffices. The trial court made no error. The jury heard the instruction in terms of specific evidence, and we should assume that they were able to follow suit. So if we were in De Novo, you wouldn't say it completely suffices, would you? I'm sorry? You're just saying that under AEDPA it suffices? As a De Novo matter, I would not think that should suffice. There is no case law requiring a more specific instruction than the one given. There's no citation in counsel's brief? What about just the Bruton, Gray, they all say that this doesn't raise a confrontation clause concern because it's not being used against the defendant. And that was the instruction given in this case? That instruction in no way prohibits the jury from using this evidence against the defendant. I have to respectfully disagree. The case law supports the fact that that vague and generalized instruction is sufficient in Respondent's position. I will get to the prosecutor's closing argument, if that's all right, if I could hold that issue for one second. I just want to point out as an initial matter, and it wasn't mentioned in the opening argument, but I just want to make sure that it is Respondent's clear position that three elements have been argued about the Co-defendant Smith's statement, Co-defendant Jarnigan's, and then this transcript of this recording. And the claims dealing with the transcript are not properly before this court. There is no Bruton claim as to this transcript in any of the previous state decisions, and therefore it was not exhausted, it's procedurally defaulted, and barred from review under 2254b1's exhaustion requirement. If there aren't any questions about that issue, I will go on. In terms of the two Co-defendant's statements, I do agree. It falls somewhere in between Gray and Richardson. There is no obvious deletion, there is no omission, they were read aloud to the jury, and the jury would not have had any idea that they had been in any way altered prior to trial. But I do feel that this case, although it follows cases that came out of this court, it leans to the side of in terms of the driver, is supported by the fact that, and again I will get to prosecutor's closing argument in one second, not only was the evidence in this case overwhelming, there were multiple witnesses who testified that petitioner was asking everyone and anyone to please kill the victim so that he wasn't able to testify against him. There were people who were present on the day of the body. There were people who delivered the drugs and the money to Co-defendants in payment for having murdered them. The evidence was overwhelming. There was, in fact, no necessity that these two statements be utilized by the jury in order to convict petitioner. And so this case falls closer to the cases out of this court in Alden, Al-Kufi, and Vasalascos, where the statement that has been altered, first of all, Jarnagin's statement, any mention of petitioner has been completely erased. It wasn't replaced with a neutral noun or with the driver. It was just erased. It was described that the victim was a snitch. Well, he was about to testify in 40 cases, so I think it goes without saying that he was, in fact, as testimony showed, a paid informant. He was a snitch. That doesn't even implicate the petitioner, much less facially incriminate him. In terms of the statement that there was a green suburban and a driver, and then the unfortunate comment made by the state in closing argument that we know petitioner drove the green suburban, the evidence submitted prior to closing arguments, in fact, contradicts the prosecutor's statement. And so we are left with a credibility issue. There was testimony at trial from Phyllis West, who was an acquaintance of petitioner, that she saw petitioner driving, quote, his blue Cadillac. She then testified that days later, after receiving a large sum of money from a drug sale, he went on to buy what she witnessed was a, quote, white Mercedes. So we have one witness putting petitioner in two other vehicles. And then we have the testimony of Michael Bullington, who himself was driving a suburban, who himself testified that he had gotten into a physical altercation with the victim, that the victim was a snitch against him, that they had had an ongoing dispute. And so we have the petitioner driving two other vehicles. We have Michael Bullington, who could himself have been a potential perpetrator, saying that not only did he have motive, but that he drives a But that would lend itself to a harmlessness determination. And respondent's position is that we don't even get there because there is no brutal violation. Darnagan's statement has no mention of petitioner. Smith's statement has a single mention of the driver of the green suburban. And that evidence only incriminates the petitioner. Is the Smith's statement the only time that the green suburban comes into evidence? No. Michael Bullington testified regarding the... I'm sorry. Darnagan said to police, and there was testimony at trial about Bullington, who testified at trial, having been a driver of a suburban. Of a suburban, but not a green suburban. Correct. So that's the only mention of the green suburban is in that statement? In terms of specific color, yes. Until you get to the closing when the prosecutor says the green suburban. Yes. And so if we were to... If this court were to find that, despite the case law out of this circuit, that just because it's incriminating based on implication, coupled with evidence submitted later at trial, that there was a brutal violation, then we can approach the question of whether or not it was harmless. And... Do you distinguish the Third Circuit case in Washington? Do you think that's distinguishable, or do you think we'd have to create a split with the Third Circuit? We certainly do need to create a split. It's highly distinguishable. In Washington, the use of the word driver became problematic because, as counsel mentioned, it was the only evidence. It was the only reference to petitioner in that case. Whereas here, testimony, witness after witness, got up on the stand, and regardless of their prior drug use, or their plea deals, or their petitioner was asking around to find someone to please kill the victim, that Smith... So you're distinguishing it on harmlessness grounds? Because of the overwhelming evidence compared to that case? No, not on harmlessness. In terms of just whether or not it's a... So what is the fact that other people... The fact that there's other people testifying and culpating the defendant have to do with whether there was a brutal violation? The question is, in Al Kufi and in Al Dinn out of this circuit, whether or not... Certainly the driver is not facially incriminating. And so then the question becomes, is it incriminating because you are implicated based on all of the other evidence that's submitted? Was there overwhelming evidence without the statement? Without what is certainly a redaction, but is more specific than the person? We can all agree. Which of those cases were habeas cases? If any. I have them here. I'm unsure enough to tell you at this moment. Okay, thank you. They're all Sixth Circuit, brutal violation claims where the district court made a reasonableness determination. Once again, though, it makes a difference whether we're in a habeas setting or a direct appeals. It absolutely does because there's even more deference if we're here today in this habeas setting under AEDPA. This isn't a question of whether reasonable minds can come to different decisions. This is whether or not the state court's was reasonable and whether the district court's decision finding that that decision was reasonable was a clear error. Is there deference under harmless error analysis under AEDPA? We are always under the umbrella of AEDPA and therefore we're always under the deferential standard of AEDPA in that there wasn't even a harmlessness determination made in the district court or in the state court. That's because they found that there was no violation. But suppose we find there maybe was a violation and we have to look at harmless error. Why would deference play into that? Because there was never any determination of whether or not it was harmless or not. I'm not disagreeing that the review at this level is de novo and certainly if this court were to enter into a harmlessness analysis it would be for the first time. I'm simply saying that then a harmlessness determination is still influenced by... The review here is not whether or not this court would have come to a decision. The review is always whether or not the district court made a reasonableness determination as to the state court's decision that can in any way be overturned. If this court were to choose to move into a harmlessness determination. This case is much like that in Schnabel and also in Stanford which came out of this court. Where the question becomes would the jury have found the state's case significantly less persuasive had the co-defendant statement been excluded and the answer in this case is clearly no. We needed neither of these co-defendant statements to convict petitioner. But that begs the question of why the prosecutor mentioned it in the closing. It does and we're left with it. It was simply the closing argument. It was not the presentation of evidence and there were multiple witnesses and again any determination as to credibility we are not in a position to make that determination. That was in state court. They were in the best position to do that and we're certainly not. This court is not. Counsel and I are not in a position to say well we would have decided differently because of all of these negative things about the witnesses. They were presented. The jury heard from them and they made a credibility determination about the green suburban, the suburban, the blue Cadillac, the white Mercedes, the closing argument and then they rendered their conviction. If there aren't any further questions, Petitioner's six amendment rights in this case were not violated by the trial court's decision not to sever his trial. No brutal violation has occurred and this court should affirm. So I first want to correct a couple of things that came up during the argument. First there is in fact a requirement that there be a proper limiting instruction. That's from the Richardson versus Marsh case. That case says the confrontation clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction whereas here the confession contains no reference to the co-defendant. Obviously the green suburban statement and the other statements discussed in brief did contain a clear reference to Mr. Allen and they were not accompanied by a proper limiting instruction. I also wanted to respond to your Honor's question about the green suburban testimony. So there was the prosecutor's closing argument but the prosecutor linked the green suburban with Mr. Allen based on the testimony of Danielle Epps who was asked what cars does Mr. Allen own. She testified that he owned three cars, one of which was a green in his closing argument when he was relying specifically on the statement about the gun from the male driver of the green suburban to tell the jury that the premeditation of the crime occurred in Hamlin County, the county of trial. Finally, I would say that with respect to the harmless error analysis, this court is very much in a position and should put itself in a position to consider whether it would have decided differently because the question is whether you as the judges believe that the error had a substantial and injurious effect on the jury verdict. That's the proper inquiry here. It is about putting yourself in the position of a juror and asking do I think or do I have grave doubts as to whether this error substantially influenced the jury verdict. Because even if you have, perhaps you're not certain, but if you have grave doubts the petition must be issued. That is the rule of the O'Neill case. The jury would have known that the male driver of the green suburban, who allegedly gave Mr. Smith the murder weapon, along with detailed instructions on how to use it, if you read the remainder of the statement, the male driver tells Mr. Smith exactly what to do with the gun and how to dispose of the gun, that statement could have only referred to one person. The were no other defendants who were alleged to have planned the crime and in fact it would have been damaging to the prosecution's case had the jury thought that the male driver was not Mr. Allen because otherwise why was Mr. Allen the one on trial for planning the crime? Which makes the prosecution's green suburban, we know that Mr. Allen drove a green suburban comment, all the more damaging because the prosecution wanted to ensure that the jury knew exactly who that driver was. If your honors don't have any further questions, I believe I will rest. Thank you. Thank you and thank you to counsel on both sides for excellent argument and I'd also like to thank Ms. Spohr and your co-counsel and your firm for taking this case on CJA. Court may adjourn the court.